**Ricky TERREBONNE,**
**Petitioner-Appellant**

v.

**Robert H. BUTLER, Warden, Louisiana**
**State Penitentiary,**
**Respondent-Appellee.**

**No. 86–3403.**

United States Court of Appeals,
Fifth Circuit.

June 20, 1988.

Michael Vitiello, New Orleans, La. (court-appointed), for petitioner-appellant.

Dorothy A. Pendergast, John J. Molaison, Jr., Elizabeth M. Gaudin, Asst. Dist. Attys., Gretna, La., for respondent-appellee.

Before CLARK, Chief Judge, GEE, RUBIN, REAVLEY, POLITZ, KING, JOHNSON, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES and SMITH, Circuit Judges.

1. Opinions appear at 624 F.2d 1363 (1980), 646 F.2d 997 (1981) (en banc), and 820 F.2d 156 (1987).

GEE, Circuit Judge:

Ricky Terrebonne's sentence to life imprisonment without parole for distributing heroin first came before a panel of our Court almost eight years ago. Since then, like some unquiet ghost, it has intermittently haunted our sessions.[1] We now consider it for the fourth time, the second en banc.

### Facts and Procedural History

The facts, as stated by Judge Rubin in his opinion for our former en banc Court, are:

In 1975, Ricky J. Terrebonne was a 21 year old heroin addict. On September 18th, two agents of the Sheriff's Department of Jefferson Parish, Louisiana, accompanied by a paid informant, encountered Terrebonne. Aware of Terrebonne's addiction, they asked him whether he had any heroin. He answered that he did not but agreed to "score a bundle" for them. This jargon describes the purchase of 25 packets of individual doses of heroin, a retail transaction. Terrebonne telephoned his "connection" (i.e. his supplier), the agents provided the funds to enable Terrebonne to make the purchase and Terrebonne left to accomplish the transaction. He returned with 22 packets. The agents took 19 and allowed him to retain three.

Some months later, Terrebonne was arrested, tried and convicted of distributing heroin. Terrebonne testified at trial. He did not deny the facts set forth above, but contended that he was entrapped. He admitted that his addiction required five to six packets of heroin each day, but he was not able to afford that much. He paid $10 to $12 per packet. He was employed as a carpenter earning $3 per hour, but he did not work steadily. He admitted that he had previously been convicted of two felonies, burglary and theft by fraud. His wife testified that, while she also worked, her hus-

band was a good provider for her and their one child.

646 F.2d at 998–99 (footnote omitted).

The sole issue presented by today's appeal from the denial of federal habeas relief is whether Terrebonne's sentence is so grossly disproportionate to his crime as to contravene the Eighth Amendment's prohibition of cruel and unusual punishments. The relevant Supreme Court authority which we must apply consists of two decisions.

In the first of these, *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), the Court held that a life sentence imposed after a third non-violent felony conviction passed muster under the Eighth Amendment. Just over three years later, however, in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the Court declared that a life sentence passed after *seven* felony convictions did not. Nor is this obvious comparative imbalance in number of convictions redressed by examining the crimes themselves, for Rummel's three had been truly non-violent—credit card fraud, forgery, and theft by false pretenses—while numbered among Helm's seven felonies were three burglaries and a third-time conviction for drunk driving.[2] Yet the Court majority in *Solem* maintained strenuously that its result was not inconsistent with *Rummel.* How can the two decisions be reconciled?

According to the *Solem* majority, the distinction rests partly upon the fact that Rummel's punishment was—as here—imposed not by the judge but by the legislature, and partly upon the troubling factor in today's case: no parole. The majority instances the first distinction, like the second, in a footnote. In note 26, on page 299 of 463 United States Reports, page 3014 of 103 Supreme Court Reporter, the Court observes that the judge who sentenced Rummel had no choice under the Texas statute but to impose a life sentence, while Helm could have received a lesser sentence under the South Dakota provision:

The State contends that § 22–7–8 is more lenient than the Texas habitual offender statute in Rummel, for life imprisonment under § 22–7–8 is discretionary rather than mandatory. Brief for Petitioner 22. Helm, however, has challenged only his own sentence. No one suggests that § 22–7–8 may not be applied constitutionally to fourth-time heroin dealers or other violent criminals. *Thus we do not question the legislature's judgment.* Unlike in Rummel, a lesser sentence here could have been entirely consistent with both the statute and the Eighth Amendment. (emphasis added).

Granting relief in today's case, as in *Rummel,* would require overturning the judgment of the legislator.

As for the second distinction, the *Solem* majority, apparently stung by the dissent's accusation that it was flouting the recent precedent of *Rummel,* observed:

Rummel did reject a proportionality challenge to a particular sentence. But since the Rummel Court—like the dissent today—offered no standards for determining when an Eighth Amendment violation has occurred, it is controlling only in a similar factual situation. Here the facts are clearly distinguishable. *Whereas Rummel was eligible for a reasonably early parole, Helm, at age 36, was sentenced to life with no possibility of parole.*

463 U.S. at 303 n. 32, 103 S.Ct. at 3017 n. 32 (emphasis added).

Thus we glean from footnotes the two distinctions between *Rummel* and *Solem* offered by the Court, that overturning Rummel's sentence would have required questioning a legislative judgment, and that parole was available to Rummel but not to Helm. Applied to Terrebonne's case, one cuts one way, the other another.

## Solem's *Standards*

The *Solem* court did not rest there, however. Having depreciated *Rummel* as offering no standards by which to judge an Eighth Amendment violation, the Court went on to sketch something of the kind.

2. A comparison not lost on the dissenters in *Solem,* see 463 U.S. at 304, 103 S.Ct. at 3017.

Our Brother Reavley describes these accurately in his dissent from the panel opinion:

> In *Solem,* the Court announced three "objective factors" that should guide a court's proportionality analysis under the Eighth Amendment. It is of course necessary for a reviewing court to consider first "the gravity of the offense and the harshness of the penalty." 463 U.S. at 292, 103 S.Ct. at 3011. The Court also suggested that two other factors, "the sentences imposed on other criminals in the same jurisdiction," and "the sentences imposed for commission of the same crime in other jurisdictions," may be useful criteria for judging proportionality. *Id.* When such comparisons are useful, as in the present case, they should be employed.

820 F.2d at 158.

With all deference, we find the criteria offered of little assistance. The first of them—the Court's direction to compare the deed to the punishment assessed—seems to us little more than a direction to engage in proportionality analysis. The other two are offered by the Court simply as criteria which "may be helpful" or "useful": the sentences imposed for other crimes by the same jurisdiction as that which imposed the sentence under review and those imposed for the same crime by other jurisdictions. We commence our analysis by applying the two "discretionary" standards as best we can to Terrebonne's crime and punishment.

*Different Crimes at Home*

The first of the discretionary criteria invites us to test the consistency and rationality of the indigenous legislature's scheme of punishment. When we do so, we find that Louisiana classifies heroin distribution with second degree murder, aggravated rape, and aggravated kidnapping.[3] First degree murder can be more severely pun-

ished (death), or can receive the same punishment as these.[4] Next in order of severity come such crimes as intentionally killing a child during delivery (life imprisonment at hard labor); forcible rape (up to forty years at hard labor, at least two without possibility of parole); and aggravated arson (six to twenty years at hard labor, two without possibility of parole).[5]

Thus the pyramid of severity of offenses, as viewed by the Louisiana legislature, commences at the top as follows:

First degree murder

Second degree murder, aggravated rape and aggravated kidnapping, heroin dealing.

Killing child during delivery, forcible rape, aggravated arson, etc.

At this point in *Solem* the Supreme Court, having surveyed the comparable South Dakota punishment pyramid,[6] declared that under it Helm had "been treated in the same manner as, or more severely than, criminals who have committed far more serious crimes." 463 U.S. at 299, 103 S.Ct. at 3014. And indeed he had.

That Court, however, was comparing Helm's multiple petty property offenses—which it repeatedly characterized as "minor" in one degree or another[7]—to such crimes as murder, arson, and kidnapping. See 463 U.S. at 298–99, 103 S.Ct. at 3014. We do not view heroin dealing in any amount—however small—as a minor offense. Nor, for that matter, did the Supreme Court speaking in *Solem,* where it referred in the course of its analysis to "very serious offenses ..., including a third offense of heroin dealing...." 463 U.S. at 299, 103 S.Ct. at 3014. We cannot say of Terrebonne's heroin dealing, as did the Solem Court of Helm's petty property

---

**3.** In order, La.Rev.Stats.Ann. 40:966 (heroin), 14:30.1 (murder two), 14:42(C) (agg. rape), and 14:44 (agg. kidnapping).

**4.** La.Rev.Stat.Ann. 14:30(C).

**5.** La.Rev.Stats.Ann. 14:87.1 (killing child); 14:42.1 (forcible rape); 14:51 (agg. arson).

**6.** At the time of Helm's sentence, the South Dakota pyramid lacked a point; capital punishment was not authorized, and Helm received the most severe punishment available for any crime. 463 U.S. at 297, 103 S.Ct. at 3013.

**7.** "relatively minor," 463 U.S. at 296–97, 103 S.Ct. at 3013; "so minor," 463 U.S. at 300, 103 S.Ct. at 3014–15.

offenses, that such dealing in any amount whatever is a far less serious crime than those with which the Louisiana legislature brigaded it: second degree murder, aggravated rape or aggravated kidnapping. To be sure, the effect of these latter crimes on the victim is shattering, devastating. As we observed in the panel opinion, however,

> Except in rare cases, the murderer's red hand falls on one victim only, however grim the blow; but the foul hand of the drug dealer blights life after life and, like the vampire of fable, creates others in its owner's evil image—others who create others still, across our land and down our generations, sparing not even the unborn.

820 F.2d at 157.

Nor can we say, attempting as best we can to compare the apple of aggravated kidnapping, the orange of heroin dealing and the pear of aggravated arson with each other, that Terrebonne "has been treated in the same manner as, or more severely than, criminals who have committed far more serious crimes." And the reason why we cannot do so is that it is far from clear to us that the other crimes that Louisiana punishes similarly *are* "far more serious."

*The Same Crime Abroad*

Turning to the second discretionary criterion, a comparison of Terrebonne's sentence with those imposed for heroin dealing by other jurisdictions, we are asked to determine whether his sentence is within the general range of punishments deemed appropriate by vastly differing legislators treating of widely disparate situations. Life imprisonment is the maximum penalty for the distribution of narcotics in a substantial number of states. See, *e.g.*, Arizona (Ariz.Rev.Stat. § 13–3410(A) (Supp. 1987); Idaho (Idaho Code § 37–2732(a)(1)(A) (1977 and Supp. 1987)); Missouri (Mo.Ann.Stat. § 195.200(1), (4) (Vernon 1978 and Supp. 1988)); Montana (Mont.Code Ann. § 45–9–101 (1987)); Rhode Island (R.I.Gen.Laws § 21–28–4.01 (A)(1) (1982 and Supp. 1987)); and Texas (Tex.Rev.Civ.Stat.Ann. art. 4476–15, §§ 4.01(b)(1) and 4.03(a) and (b)(1) (Vernon 1976 and Supp. 1988)). Even so, it must be conceded that parole is usually available in these jurisdictions without Louisiana's requirement of a prior commutation of the sentence to a term of years.[8]

It thus appears that, among the States of the Union, Louisiana exacts the most severe penalty for heroin dealing. The United States, however, prior to the Sentencing Reform Act, authorized one even more severe for dealing in significant amounts of certain specified, dangerous narcotics: life imprisonment, with parole in no circumstances whatever. 21 U.S.C. § 841(b). Such sentences are also required by the Sentencing Guidelines for aggravated crimes involving trafficking in substantial

---

**8.** Terrebonne was twice sentenced to life imprisonment "without parole," once in 1975 and again in 1984 after a successful state court challenge to the first sentencing procedure. The parties speak, as do we, in terms of Louisiana's "mandatory life sentence without parole" for conviction of dealing in heroin, but this is not strictly accurate. *Every* life sentence imposed in Louisiana is "without parole" by reason of a general statutory provision denying parole to a person serving a life sentence until his sentence has been commuted to a term of years. La.R.S. 15:574.4 B. Nor, in fact, was the so-called "mandatory" life sentence really mandatory for Terrebonne.

At the time Terrebonne was first sentenced, although the judge had no discretion but to *impose* such a sentence, he could have either ordered the life sentence enforced or he could have suspended the execution of it, with or without a term of probation. La.R.S. 40:966 B(1), as amended by Acts 1973, No. 207 § 3; *State v. Hopkins,* 367 So.2d 346 (La.1979). Under article 895 of the Louisiana Code of Criminal Procedure, in effect in 1975, if probation were imposed the court could require, as a condition of probation, that the defendant serve up to a year in a local jail. (Amended by Acts 1982, No. 27 § 1, to provide for confinement for two years.)

In addition, as recognized by the Louisiana Supreme Court in *State v. Hopkins, supra,* under La.Code Crim.Proc. art. 893, as it read in 1975, the court could have suspended the sentence of even a multiple offender convicted of heroin distribution, if the defendant "intends to participate in the program authorized by the Federal Narcotics Rehabilitation Act or other federal or state rehabilitation programs."

The second sentencing judge had the same options as the first, with the possible exception of the rehabilitation option under La.Code Crim.Proc. art. 893, which was removed by an amendment in 1980 but which may have remained available to Terrebonne at re-sentencing on *ex post facto* considerations.

amounts of heroin or certain other controlled substances and of multiple offenses involving such trafficking. See Sentencing Guidelines and Policy Statements 2.30 and 4.9 (April 13, 1987).[9]

It thus appears that Terrebonne's punishment, while quite severe by American standards, is not one that is bizarre or outlandish. No one seriously disputes that his was a serious, not a minor, crime or that, while his conviction was his first for drug trafficking, he was in fact a regular trafficker. The United States itself has provided for the sentence imposed upon Terrebonne in trafficking cases involving multiple offenses or complications.[10] More, in many jurisdictions Terrebonne's criminal record would have qualified him as an habitual offender; nor does his $50 to $70 a day heroin habit, noted in our earlier opinion en banc, support a view that he is a minor offender. 646 F.2d at 1002. To the contrary, the record supports the inference that this five or six packet daily habit would, at the time of his crime in 1975, have required him to arrange at least two "bundle" sales per day. At that time, a 25–packet "bundle" went for $175; thus in 1975 Terrebonne was dealing $350 in heroin per day—or more than $125,000 per year. As of 1975, this was a significant amount of heroin to pump into Louisiana's veins.[11]

### "The Gravity of the Offense and the Harshness of the Penalty"

And so, having sought refuge in the Court's discretionary standards and having found little succor there, we return to its central command: that, in the name of the Eighth Amendment, we permit or forbid the Louisiana legislature to exact an (in effect) mandatory life sentence without parole of anyone found guilty of dealing in heroin.

Hard cases make bad law, as the legal adage has it; and Terrebonne's case is a hard one. At age 21, with a wife and a child, he went up for life at state expense because he was caught contributing to what seems generally agreed to be our country's major domestic problem: the sale and use of hard drugs. He was a carpenter who worked at his trade from time to time. He was young; and his precocious prior crimes were—in all probability, as we have recognized—connected with his appetite for drugs.[12] 646 F.2d at 1002.

In this instance, the tiger trap has sprung on a sick kitten; and the point that Louisiana doubtless wished to make by punishing drug dealers in a signal manner finds a pathetic exemplar in the hapless Terrebonne. Even so, and for several reasons, it is by no means clear to us that because of this we are justified in tampering with Louisiana's attempts to bring its critical narcotics problem under control.

In the first place, to do so would clearly contravene at least the spirit and language of the *Rummel* opinion, a decision that the *Solem* Court insisted remains good law. There (then) Justice Rehnquist, writing for the majority, stated

---

9. We note in passing, although we view them as too far removed from our cultural and legal traditions to bear significantly on our inquiry, that foreign jurisdictions with serious drug problems provide penalties far more severe, presumably with a view to extirpating the menace root and branch: the Peoples Republic of China, the Republic of China, Thailand, Saudia Arabia, Bahrain, and the United Arab Emirates exact the death penalty for trafficking, and Malaysia and Singapore exact that penalty for mere possession of more than half an ounce of heroin.

10. Indeed, not long ago the media reported serious consideration by the Senate of a Federal death penalty for drug-related killings. E.g., The N.Y. Times, National Ed., May 17, 1988, p. 12.

11. Given the inflation that has taken place since 1975, the figure given would be well over $250,-000 in 1988 dollars.

12. Counsel attempts to take advantage of Terrebonne's condition as an addict, suggesting that this is a mitigating circumstance that renders his harsh sentence especially inappropriate. For two reasons, we reject the suggestion: First, addiction is easily feigned and all too easily acquired, so that if it be cast as a mitigating factor few non-addicted dealers will appear for sentencing; Second, we think it would be poor policy indeed to attach benefits to a voluntarily assumed and voluntarily disposable (admittedly, with effort) addict status. *Cf. Traynor v. Turnage*, —— U.S. ——, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988).

Given the unique nature of the punishments considered ... in the death penalty cases, one could argue without fear of contradiction by any decision of this Court that for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative.

445 U.S. at 274, 100 S.Ct. at 1139. And, in a footnote, he offered as an example of when proportionality might be offended the extreme case of a legislature's declaring "overtime parking a felony punishable by life imprisonment." *Id.* n. 11. Terrebonne's crime *is* a far cry from a traffic offense.

As Judge Rubin noted earlier for our Circuit, however, the *Rummel* opinion rests the Court's actual decision on a different ground:

[T]he Court upheld Rummel's sentence because the imposition of a life sentence for the offense involved served an obvious and substantial state interest and hence was not, in fact, grossly disproportionate. See *id.,* 445 U.S. at 283–87, 100 S.Ct. at 1144–45, 63 L.Ed.2d at 396–99.

The Court determined that Texas has a right to protect its citizens from incorrigible recidivists. Although Rummel's crimes each involved a trivial amount, he had shown that he was "simply unable to bring his conduct within the social norms prescribed by the criminal law of the state." 445 U.S. at 283, 100 S.Ct. at 1144, 63 L.Ed.2d at 396. When sufficient proof, such as three felony convictions followed by imprisonment, indicates that a felon will never lead a law-abiding life, the state may remove the felon from society for a long period or permanently without inhibition from the Due Process Clause of the Fourteenth Amendment. See *id.; Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967).

A life sentence for the crime of distributing heroin serves substantial state interests in the same manner that state interests were served by a life sentence for recidivism in *Rummel.* The state

could reasonably treat heroin distribution as a serious crime equivalent to crimes of violence. It could conclude:

... The drug seller, at every level of distribution, is at the root of the pervasive cycle of drug abuse. Measured thus by the harm it inflicts upon the addict, and, through him, upon society as a whole, drug dealing in its present epidemic proportions is a grave offense of high rank.

*State v. Terrebonne, supra,* 364 So.2d [1290] at 1292 [La.1978], *quoting Carmona v. Ward,* [576 F.2d 405 (2d Cir. 1978)], *supra.* Terrebonne willingly participated in the system of distribution, knowing the effects of the drug he procured.

646 F.2d at 1001.

In the second, invalidating Terrebonne's sentence would require a substantial extension of *Solem.* Time and again in that opinion, as we note above, the Court minimized Helm's offenses—referring to them as minor and emphasizing that despite their comparative insignificance they had received the severest punishment imposable at that time in South Dakota for any offense whatever. *Supra* slip op. at 4247, at 503, n. 6. In the same breath, however, the Court placed repeated heroin dealing in the category of "very serious offenses," going on in a footnote to observe that "[n]o one suggests that [the statute under which Helm was sentenced] may not be applied constitutionally to fourth-time heroin dealers or other violent criminals." 463 U.S. at 299 and n. 26, 103 S.Ct. at 3014 and n. 26. It is one thing for a court such as we to contemplate an extreme case such as the felonizing of overtime parking, striking down such an action as outlandish, and quite another for us to interfere in the various gradations of punishment specified by the legislator for crimes which *no* one disputes are serious ones—and to do so on Constitutional grounds, at that. We may be competent to contemplate outrageous disproportion and declare that it cannot be; certainly, however, we are not equipped, nor do our procedures lend themselves to equipping us, with the factual knowledge

and common sense of what *is* proportional, what punishments *should* be administered for particular offenses, and along what general lines the positive legislative attack on criminality should proceed. One who is to do this has need, like Antaeus, to touch the earth pretty frequently, an exercise to which our isolation does not conduce.

Thus, it is perfectly consistent for us to conclude that according to our lights Terrebonne's punishment was too severe, was not *well* proportioned to his crime, but that according to the Constitution's ban on "cruel and unusual" punishment Terrebonne's punishment was not *dis* proportionate to his crime.

Finally, for whatever it may be worth, we do not lack sympathy for Terrebonne; and, in our view, his sentence is a harsh one indeed. The fact remains, however, that certain offenses are so sufficiently serious as to merit severe punishment *regardless* of who commits them. No one suggests, for example, that the younger Walker should be dealt with leniently despite having betrayed his Country and his comrades for money, that it is a shame Pat Garrett did not behave more compassionately toward Billy the Kid, or that Lizzie Borden should have been spared the death penalty—had the case against her been made out—because she was an orphan. We cannot say the Louisiana legislature could not rationally conclude that heroin dealing is properly classified with such crimes as theirs; and, whatever *Solem* may mean as applied to lesser offenses such as those of Rummel or Helm, we do not believe the Court intended by it to put us in the business of second-guessing state legislatures as to the punishment of serious crimes—crimes such as dealing in heroin.

*Conclusion*

And so we come to the end of our survey. From it we deduce that Louisiana's penalty for heroin trafficking is very likely the most severe of any American jurisdiction, although less so than that of several foreign states, and that—insofar as we are capable of comparing such diverse matters —it is not disproportionate to those exacted by Louisiana for crimes of comparable seriousness.

Plainly the judgment of the Louisiana Legislature, grounded in the legislators' intimate knowledge of local conditions, is that the best way to deal with the state's narcotics problem is to serve notice on all and sundry that dealing in any amount of certain specified, especially-noxious drugs carries the risk of life imprisonment—a "life" imprisonment which, like one imposed under the new Federal Sentencing Guidelines, is authentically for *life*. As we observed in our former en banc opinion in this case, the Court upheld Rummel's life sentence for recidivism "because the imposition of a life sentence ... served an obvious and substantial state interest and hence was not, in fact, grossly disproportionate." 646 F.2d at 1001.

The same is true of the sentence in this case. To be sure, Terrebonne's sentence is more severe than Rummel's, but so was his crime. In addition, Terrebonne's sentence is the same as that stricken down by the Court in *Solem*, but Helm's crimes were all characterized by the Court as minor, while that of Terrebonne is thought to be such by no one. If Louisiana's hands are to be tied in the face of the present assault on its society and citizens by the drug menace, some other Court will have to do it. We decline to do so.

AFFIRMED.[13]

---

**13.** We are mystified that counsel for Terrebonne have not directed the attention of the Louisiana habeas courts to indications in the record that the second judge who sentenced him as well as the first was either unaware of the range of sentencing options available to him (explained in note 8 above) or did not realize the effect of the sentence that he imposed. Referring to such an indication in the *first* sentencing hearing—the judge's remark that "This

Court has no choice in what it may do"—Judge Rubin noted, in our first en banc opinion:

> Whether the judge was in fact mistaken in his comprehension of Louisiana law or whether his remarks were a deliberate effort to escape the painful duty of telling the defendant that he was not imposing one of the lesser sentences permissible, we need not now decide. Although the erroneous imposition of a "mandatory" life sentence in ignorance of

KING, Circuit Judge, specially concurring:

I concur in the judgment and in the basic rationale for that judgment set forth in Judge Gee's opinion. I read *Solem* as holding that the culpability of the defendant is one factor that must be considered in the eighth amendment analysis and that a major factor to be considered in determining culpability is the nature of the crime committed by the defendant. I do not read *Solem* as saying that the personal circumstances of the defendant can, for every crime, outweigh the seriousness of that crime. I think that the State of Louisiana could constitutionally have concluded that the distribution of heroin is so serious a crime as to override any and all individual circumstances which would lessen the defendant's culpability. That same consideration leads me to conclude that the sentence imposed on Terrebonne is not significantly disproportionate to his crime.

REAVLEY, Circuit Judge, with whom RUBIN, POLITZ, JOHNSON, and WILLIAMS, Circuit Judges, join dissenting:

I have never faulted the Louisiana legislative scheme under which Terrebonne was sentenced. Under that scheme a person convicted of distributing heroin may be sentenced to life imprisonment without parole, or may have the sentence suspended with supervision for one to five years, or

may be confined in jail for as long as one year during the period of suspension and probation. I fully concur with the majority that this law of Louisiana has no Eighth Amendment infirmity.

My problem is with the state court's order that sent Ricky Terrebonne to prison for the fifty years or so remaining of his lifetime. The Supreme Court in *Solem v. Helm,* 463 U.S. ·277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) taught us not to consider the offense in the abstract (*id.* 103 S.Ct. at 3013), but to weigh the culpability of the offender. *Id.* at 3011. From what we know about Ricky Terrebonne, and what was known at either the 1976 or 1984 sentencing, there is simply no reasonable justification for this sentence.

Late one afternoon in September of 1975 sheriff's deputies went to Terrebonne's house and asked him to get them heroin. Within an hour the $175 trade was made with a supplier, resulting in two or three packets for Terrebonne. The following January officers broke into his house and took him from his bed where he was sleeping with his wife and little daughter. Today he has been confined for 12½ years and has no prospects for ever being free again.

This young man had a heroin addiction and he participated in the drug transaction. At age 17 he had pleaded guilty to burglary of a building for which he was sentenced

---

discretionary alternatives may violate both the Due Process Clause of the fourteenth amendment and Louisiana Law,[2] Terrebonne did not raise the issue either in state court or in his federal habeas petition. It is fundamental that we review only the grounds presented in the petition for habeas corpus. *Brown v. Alabama,* 619 F.2d 376 (5th Cir. 1980). We are, of course, precluded from considering any issues for which state relief has not been sought. 28 U.S.C. § 2254; *Galtieri v. Wainwright,* 582 F.2d 348 (5th Cir. 1978) (en banc).

    2. See *Hicks v. Oklahoma,* 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980); *Willeford v. Estelle,* 637 F.2d 271 (5th Cir. 1981); *State v. Foret,* 380 So.2d 62 (La. 1980).

646 F.2d at 999–1000 (footnote 3 omitted). Terrebonne was resentenced in 1984, again to life imprisonment—precisely the same sentence as his original one, with the same effect. When

he asked the second sentencing judge what the difference was, however, the judge, apparently under the mistaken belief that he had somehow ameliorated Terrebonne's circumstances, replied:

> "A *big* difference. There's a *big* difference. Your attorney can explain that to you. At this time you're *just* sentenced to life imprisonment at hard labor. (emphasis added).

In fact, there was *no* difference; and eight years after Judge Rubin had first patiently explained to all who would listen how reconsideration of Terrebonne's sentence might be obtained, complete with citation of authorities, the point has never been raised since his second sentence; and he remains incarcerated under a sentence arguably invalid! And now, as then, we are unable to consider the question because it has neither been drawn before us nor have state remedies as to it been exhausted.

to one year imprisonment, which was suspended. Earlier in 1975 he had pleaded guilty to theft under $100 (a misdemeanor, not a felony) for which he was sentenced to six months confinement, again suspended. He had not been imprisoned before. He had demonstrated no capacity for violence. His wife was troubled by his unadmitted addiction, although her testimony disproved the six packet daily demand which the majority surmises as the extent of Terrebonne's habit. Add that culpability together and it remains grossly disproportionate to the sentence to Angola for a lifetime.

I need not repeat what was said in my panel dissent. 820 F.2d at 158. For the reasons stated there I continue to believe that under the authority of *Solem* the writ should be granted. After *Solem* no court may "spring a trap on a sick kitten," to use the majority's description of this case, without encountering the Eighth Amendment.

I do wish to join wholeheartedly in what the majority has said in footnote 13 of the opinion. It seems clear from the record that neither judge, in 1976 or 1984, understood the full options of the Louisiana law or the full consequences of the sentences given. I read this court to be saying that a new petition for habeas corpus on that ground will not be stigmatized as an abuse of the writ. Finally, it is clear that, if Terrebonne should be resentenced, his culpability will be at issue and the governing options will be those of the Louisiana law, Rev.Stat.Ann. § 40:966, La. C.Cr.P. Arts. 893, 895, in effect on September 18, 1975, the date of the offense. *State v. Schaeffer,* 414 So.2d 730 (La.1982).

ALVIN B. RUBIN, Circuit Judge, with whom JOHNSON, Circuit Judge, joins dissenting:

I join in Judge Reavley's dissent. Having, however, written the earlier en banc opinion that upheld Terrebonne's sentence,[1] I should explain why I have changed my

mind. The reason is simple; whether or not *Solem v. Helm*[2] is, as it purports to be, consistent with *Rummel v. Estelle,*[3] *Solem* clearly broadens the scope of the Eighth Amendment fixed by *Rummel.*

While Terrebonne had two prior convictions and had a daily heroin habit that he likely could not support without turning to crime regularly,[4] he dealt a small quantity of heroin in this case, procured it at the agents' request with funds supplied by them, did so only to get a fix for himself, made no monetary profit from the transaction, did not seek to "push" the heroin, had no record of violence, and worked at least occasionally.

I agree that the Louisiana sentencing scheme, though inflexible, is constitutional on its face, for the reasons ably stated by my brother Gee. When, however, I apply *Solem's* principles to this sentence, I conclude, as does my brother Reavley, that it is unconstitutional as applied to Terrebonne, for confining him to prison for life without the possibility of parole is "significantly disproportionate to his crime, and is therefore prohibited by the Eighth Amendment."[5]

1. *Terrebonne v. Blackburn,* 646 F.2d 997 (5th Cir.1981) (en banc).

2. 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).

3. 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980); *see Solem,* 463 U.S. at 303 n. 32, 103 S.Ct. at 3017 n. 32.

4. *See Terrebonne,* 646 F.2d at 1002.

5. *Solem,* 463 U.S. at 303, 103 S.Ct. at 3016.